UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL NO. 4:24-cv-03187 |
| | § | |
| $50,194.47 IN SEIZED FUNDS, | § | |
| ONE 2018 VOLVO XC60, and | § | |
| $34,993.59 IN SEIZED FUNDS, | § | |
| Defendants. | § | |

**VERIFIED COMPLAINT FOR CIVIL FORFEITURE
IN REM AND NOTICE TO POTENTIAL CLAIMANTS**

The United States of America, Plaintiff, files this action for forfeiture in rem against the three Defendant Properties. The United States alleges on information and belief as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1355, 1391(b) and 1395(a) and (b).

**THE DEFENDANT PROPERTIES**

3. The First Defendant Property is $50,194.47 in funds seized from a Certificate of Deposit held at First Service Credit Union with an account number ending in 0208, which the government alleges was purchased with health care fraud

proceeds from bank accounts held in the names of Tataw Charlz Bisong ("Charlz Bisong") and one of his sons with initials CBB.  The property was also involved in money laundering.

4. The Second Defendant Property is a 2018 Volvo XC60 with Vehicle Identification Number YV4A22RK5J1091273, which the government alleges was purchased by Charlz Bisong with health care fraud proceeds.  The property was also involved in money laundering.

5. The Third Defendant Property is $34,993.59 in funds seized from various Term Share Certificates at Brazos Valley Schools Credit Union, held under a member number ending in 0200.  The government alleges that the Certificates were purchased with health care fraud proceeds and placed in the names of Charlz Bisong and one of his sons with initials GEB.  The property was also involved in money laundering.

## STATUTORY BASIS FOR FORFEITURE

6. The United States alleges that the three Defendant Properties are subject to forfeiture because they constitute or are derived from the proceeds of federal health care fraud in violation of 18 U.S.C. §§ 1347 & 1349; and because they are property involved in money laundering in violation of 18 U.S.C. § 1956 (h).

7. This is a civil action <u>in rem</u> brought to enforce the provisions of 18 U.S.C. § 981(a)(1)(C), which provides for the forfeiture of "[a]ny property, real or

personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in [18 U.S.C.] section 1956(c)(7) of this title), or a conspiracy to commit such offense." A "Federal health care offense" is "specified unlawful activity" pursuant to 18 U.S.C. §1956(c)(7)(F), and a Federal health care offense is defined by 18 U.S.C. §24(a) to include violations of 18 U.S.C. §§1347 (health care fraud) and 1349 (conspiracy to commit health care fraud), as well as violations of 42 U.S.C. §1320a-7b (payment of kickbacks related to federal health care programs).

8. This action is also brought to enforce the provisions of 18 U.S.C. § 981(a)(1)(A), which provides for the forfeiture of "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 [of Title 18], or any property traceable to such property."

## FACTS AND ALLEGATIONS

9. Charlz and Angela Bisong, husband and wife (the "Bisongs"), co-owned and operated SIERCAM HEALTHCARE SERVICES, LLC ("SIERCAM"). SIERCAM was incorporated in Texas in August 2005 and had offices in Rosenberg, Texas, which is within the Southern District of Texas.

**I.  The Federal Health Care Fraud**

10. Based on its investigation, the government alleges that the Bisongs used SIERCAM to engage in health care fraud, specifically:

3

(a)     The Bisongs maintained a Medicare provider number for SIERCAM that they used to submit claims to Medicare for home health services that were not medically necessary, not provided, or both.

(b)     The Bisongs paid and caused the payment of kickbacks, often in cash and gift cards, to Medicare beneficiaries in exchange for the patients' allowing SIERCAM to use their Medicare information to bill Medicare for home health services.

(c)     The Bisongs directed many SIERCAM patients to see specific doctors to be certified for home health care, and the Bisongs paid the fees for the doctor visits on behalf of the patients.

(d)     The Bisongs falsified patient files to make it appear that the services for which SIERCAM billed Medicare were medically necessary, actually provided, and met Medicare's criteria for reimbursement.

11.     A grand jury returned an indictment against the Bisongs on or about December 9, 2020, in Cause No. 4:20-CR-672 in the Southern District of Texas. The indictment charged them in Count One with conspiracy to commit health care fraud from approximately August 2005 through December 2020 (18 U.S.C. § 1349); in Counts Two through Seven with substantive counts of health care fraud (18 U.S.C. § 1347); and in Count Eight with conspiracy to defraud the United States and to pay and receive health care kickbacks from approximately January 2012 through December 2020 (18 U.S.C. § 371). The indictment contained a general notice of forfeiture, and a Supplement to Notice of Forfeiture (Doc. 36) was filed on May 12,

2022, specifically listing the three Defendant Properties.

12. Each defendant entered into a plea agreement and pleaded guilty on November 2, 2022, to Count Eight of the indictment, the kickback conspiracy. The Bisongs were sentenced on November 29, 2023, and ordered to pay $3,382,861.81 in restitution to Medicare, jointly and severally.

## II. The Money Laundering Conspiracy

13. Based on its investigation, the government alleges that the Bisongs conspired to and did engage in money laundering, in violation of 18 U.S.C. § 1956(h). They conspired in violation of 18 U.S.C. § 1956(h) to make financial transactions that concealed and disguised the nature, location, source, ownership and control of the health care fraud proceeds in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and to knowingly conduct monetary transactions in criminally derived property in an amount greater than $10,000, which was in fact proceeds of a specified unlawful activity, in violation of 18 U.S.C. § 1957.

14. As shown below, the Bisongs laundered funds by withdrawing health care fraud proceeds in cash from one bank account and then redepositing that cash into another bank account held in a different name; by placing health care fraud proceeds in bank accounts held in the names of their sons; and by conducting financial transactions involving more than $10,000 in health care fraud proceeds (such as the purchase of CD x0208).

### III. Defendants Agreed to the Forfeiture of the Defendant Properties

15. As part of their plea agreements, the defendants admitted that they used the SIERCAM Medicare provider number to submit "claims to Medicare for home health services that were not medically necessary, not provided, or both"; and that they received payment of $3,382,861.81 from Medicare for home healthcare claims between approximately December 2013 and January 2020 that were predicated (a) on illegal kickbacks to patients and to one certain doctor, and (b) on patients certified without regard to medical necessity.

16. This civil forfeiture complaint is necessary because the source of funds for three Defendant Properties did not fully line up with the single count of conviction and were thus not forfeited as part of the criminal case. In their plea agreements, however, both defendants admitted that the property listed in the Supplemental Notice (the three Defendant Properties) was subject to forfeiture, whether criminal or civil. The defendants further agreed to waive any interest in assets that were the subject of a related judicial forfeiture proceeding.

### IV. Fraudulent Proceeds from SIERCAM Account x3751 Funded the First Defendant Property ($50,1904.47 seized from CD x0208)

17. The government's investigation has shown that between September 2005 and October 2016, the Bisongs directed Medicare to deposit payments for claims for home health services into a bank account at BBVA Compass Bank, held

in the name of SIERCAM Healthcare Services, LLC, with an account number ending in 3751 ("SIERCAM Account x3751"). SIERCAM Account x3751 was funded by Medicare payments for fraudulent claims.

18. A review of bank records shows that fraudulent proceeds from SIERCAM Account x3751 funded two bank accounts at First Service Credit Union, one with an account number ending in 0074 ("Account x0074") and one with an account number ending in 0002 ("Account x0002"). In turn, those two accounts funded a Certificate of Deposit with an account number ending in 0110 ("CD x0110," now closed). All three downstream accounts were held jointly in the names of Charlz Bisong and his son CBB. After CD x0110 matured, those funds were used to purchase another CD, the First Defendant Property, this time placed solely in the name of CBB.

19. A financial analysis of First Service Credit Union bank records showed a pattern of cash transfers of the health care fraud proceeds. Within a week of a Medicare deposit into SIERCAM's Account x3751, and most often on the same day, there would be a cash withdrawal from Account x3751, followed by a cash deposit into Account x0074 or Account x0002, usually in the amount of $1,000 or $2,000. The United States alleges that CD x0110 was funded by cash proceeds deposited into Accounts x0074 and x0002.

20. The CD x0110 account received continuing deposits of health care

fraud proceeds through October 2016. The balance of CD x0110 was $56,443.11 in January 2017, when it was closed. Bank records show that on January 5, 2017, the $56,443.11 was used to purchase a new "jumbo" 60-month CD with an account number ending in 0208 ("CD x0208"), this time placed solely in the name of CBB.

21. There were no additional deposits to CD x0208, but in 2018 and 2019, there were partial withdrawals in the total amount of $9,086.61. At the time of seizure, the CD's remaining value was $50,194.47.

22. The United States thus submits that the $50,194.47 seized from CD x0208 constitutes or is derived from health care fraud proceeds, and that the property is subject to forfeiture.

## V. Fraudulent Proceeds from SIERCAM Account x9062 Funded the Second and Third Defendant Properties

23. Beginning in October 2016, the Bisongs changed the receiving account for SIERCAM health care fraud proceeds. They directed Medicare to deposit payments into a bank account at BBVA Compass Bank, held in the name of SIERCAM Healthcare Services, LLC, with an account number ending in 9062 ("SIERCAM's Account x9062").

24. Charlz Bisong held two bank accounts at Brazos Valley Schools Credit Union (BVSCU), one with an account number ending with S000 ("Account xS000"); and one with an account number ending with S010 ("Account xS010"). A financial analysis showed that the BVSCU personal accounts were funded with

8

health care fraud proceeds that came from SIERCAM's Account x9062.

25. As explained further below, health care fraud proceeds that flowed through all three bank accounts were used to acquire the Second and Third Defendant Properties.

A. <u>The Second Defendant Property (a 2018 Volvo XC60)</u>

On or about June 11, 2018, Charlz Bisong purchased a 2018 Volvo XC60 with health care fraud proceeds. The Volvo was purchased with a $5,000 down payment to Sonic Momentum JVP, LP, directly from SIERCAM's Account x9062, along with a car loan. The loan payments were thereafter made out of three accounts: SIERCAM's Account x9062 and Bisong Accounts S000 and S010. A financial analysis showed that the amount of Medicare fraud proceeds from each of the three accounts that were used to pay off the car loan was approximately $22,165.12, $16,622.25, and $6,420.27. The vehicle was thus purchased with fraud proceeds.

26. The United States submits that the 2018 Volvo constitutes or is derived from health care fraud proceeds, and that the property is subject to forfeiture.

B. <u>The Third Defendant Property ($34,993.59 seized from BVSCU)</u>

Starting in August 2011, the Bisongs purchased a number of Term Share Certificates ("Certificates," which are like CDs) at Brazos Valley Schools Credit Union under a member number ending in 0200. The vast majority of the purchases were of 48-month Certificates. The Certificates were held in the name of Charlz

9

Bisong and his son GEB. Because bank records were only available from January 2013 forward, the government only sought seizure of a subset of the still-existing Certificates.

27. A financial analysis of the bank records and Medicare deposits was conducted and, as with the older Medicare-funded account, a pattern emerged. Within a week of a Medicare deposit into SIERCAM's Account x9062, and most often on the same day, there would be a cash withdrawal from Account x9062 (usually in the amount of $1,000), followed by a cash deposit into Account x0002, followed by a purchase of a $1,000 Certificate. On those occasions when the cash deposit was $2,000, the corresponding Certificate would be purchased in the amount of $2,000.

28. The Certificates that were seized fit the pattern of funds moving from Account x9062 to Account x0002 and then to a Certificate. The numbers of the seized Certificates were Nos. 0519 through 0525, Nos. 0527 through 0529, Nos. 0535 through 0552, and No. 0554. Their total seized value of $34,993.59 includes interest earned on the Certificates, which is likewise subject to forfeiture because the interest was derived from fraud proceeds.

29. The United States submits that the $34,993.59 seized from the multiple Certificates constitutes or is derived from health care fraud proceeds, and that the property is subject to forfeiture.

## VI. All Three Defendant Properties are Property Involved in the Money Laundering Conspiracy

30. The facts stated above show that the Bisongs laundered funds by withdrawing health care fraud proceeds in cash from one bank account and then redepositing that cash into another bank account held in a different name; by placing health care fraud proceeds in bank accounts held in the names of their sons; and by conducting financial transactions involving more than $10,000 in health care fraud proceeds (such as the purchase of CD x0208).

31. The Bisongs conspired in violation of 18 U.S.C. § 1956(h) to make financial transactions that concealed and disguised the nature, location, source, ownership and control of the health care fraud and to knowingly conduct monetary transactions in criminally derived property in an amount greater than $10,000.

32. The United States submits that all three of the Defendant Properties were involved in the money laundering conspiracy, and that the property is also subject to forfeiture on that basis.

## **NOTICE TO ANY POTENTIAL CLAIMANT**

YOU ARE HEREBY NOTIFIED if you assert an interest in the property subject to forfeiture and want to contest the forfeiture, you must file a verified claim which fulfills the requirements set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. The verified claim

must be filed no later than 35 days from the date this Complaint was sent to you in accordance with Rule G(4)(b); or, if this Complaint was not sent to you, no later than 60 days after the first day of publication of notice on an official government forfeiture internet site, in accordance with Rule G(5)(a)(ii)(B).

An answer or a motion under Rule 12 of the Federal Rules of Civil Procedure must be filed no later than 21 days after filing the verified claim. The claim and answer must be filed with the United States District Clerk for the Southern District of Texas, and a copy must be sent to the undersigned Assistant United States Attorney at the address provided in this Complaint.

## **RELIEF REQUESTED**

Under the totality of the circumstances, it is believed that the Defendant Properties are subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) as property which constitutes or is derived from proceeds traceable to specified unlawful activity, specifically health care fraud offenses; and it is further believed that the Defendant Properties are subject to forfeiture under 18 U.S.C. § 981(a)(1)(A) as property involved in money laundering.

The United States will serve notice, along with a copy of the Complaint, on any persons who reasonably appear to be potential claimants in this matter.

The United States seeks a final judgment forfeiting the three Defendant Properties to the United States and requests any other relief to which the United States may be entitled.

Respectfully submitted,

ALAMDAR S. HAMDANI
UNITED STATES ATTORNEY

By:   *s/ Kristine E. Rollinson*
Kristine E. Rollinson
SDTX Federal No. 16785
Texas State Bar No. 00788314
Assistant United States Attorney
1000 Louisiana Street, 25th Floor
Houston, Texas 77002
Tel.: (713) 567-9000

**VERIFICATION**

I, Toya L. Davis, Special Agent with the Federal Bureau of Investigation, declare under the penalty of perjury, as provided by 28 U.S.C. ' 1746, that I have read the foregoing Verified Complaint for Civil Forfeiture In Rem and Notice to Potential Claimants, and that the facts stated in paragraphs 3 through 5 and paragraphs 9 through 32 of the Complaint are based upon my personal knowledge, upon information obtained from other law enforcement personnel, or upon information I obtained in the course of my investigation. Those facts are true and correct to the best of my knowledge and belief.

Toya L. Davis, Special Agent
Federal Bureau of Investigation